Okay, Mr. McGuire. May it please the Court. Respectfully, the District Court got the facts and the law wrong in this case. It mistook the date at which my client, OQ, became aware of the underlying lawsuit, a fact with significant legal importance for the contracted issue in this case. It ignored our primary contract interpretation argument, which was that exclusion does not apply to bodily injury liability coverage. Then it applied the fortuity doctrine, an affirmative defense that was never pleaded and was raised as an independent basis for judgment for the first time in a reply brief on summary judgment briefing. And finally, it mistook the notice prejudice rule as being totally inapplicable to claims made policies rather than being inapplicable only for the claims made provisions within policies. Those errors are indefensible, so the District Court's grant of summary judgment to the insurers should be reversed and judgment should be rendered to my client, OQ, chemicals on its breach of contract claim. Your Honors, the first thing that I'd like to focus in on is the notice prejudice issue because I think that that's probably the most fundamental issue before this Court. Because even if this Court were to find that there was a violation of exclusion in under Texas law, because this is a notice provision that's an issue, the insurers would still need to show that they were prejudiced in some way in order to disallow coverage under the policy. That's why my client moved for summary judgment on those grounds. Now, if exclusion in applies to bodily injury liability coverage, that means that my client, OQ, chemicals, was required to report pollution conditions as soon as practicable. Under Section 4A of the policy. But under Texas law, unless an insurer is prejudiced by the violation of a as soon as practicable notice requirement, the insurer cannot deny coverage because of the failure to give notice under the cases that we cite from the Texas Supreme Court, such as the Prodigy case and the PAG case. And the insurers only offer token resistance to the notion that they were not prejudiced. The facts before this Court are pretty clear. They were able to enter the case soon after we received notice of it and they were able to defend this case with a lawyer of their choice for multiple years. And they proceeded to litigate this case until August of 2022 when they finally issued a denial of coverage letter to my client. The only competent evidence that's before this Court that's been identified in the record where prejudice is even mentioned is an expert that they submitted, Catherine Hanna, who has no experience in underwriting policies whatsoever, who testified that she wasn't saying that anyone would or would not have done anything differently. That's the essence of an intangible harm. And that's the opposite of what is required both by this Court's precedent and the precedent of the Texas Supreme Court. Prejudice must be tangible, according to the Berkeley Regional Insurance Corporation case that we cite in our opening brief. That means more than prejudice that is merely theoretical or presumed, according to Tumble Steel, also cited on page 35 of our opening brief. The mere possibility of prejudice is not enough. And that's according to the United States Fire Insurance Company case that we cite on page 36 of our brief. Your Honors, there are a few questions that are posed by the insurers in this matter. They argue, for example, that the notice prejudice rule only should apply to conditions precedent, that it shouldn't apply to exclusions, like exclusion in an issue in the policy here. That's flat wrong. The Supreme Court of Texas ruled in the PAG case that the fact that one case involved an exclusion and another involved a provision, quote, does not supply a valid ground for distinguishing the cases. That's cited on page 26 of our reply brief. Another issue that got raised by the District Court itself is this mistake as to arguing that the notice prejudice rule is completely inapplicable when you're discussing claims made policies. That's not quite right either. Claims made provisions, when they are violated, are not subject to the notice prejudice rule. That's because of the very nature of a notice provision in a claims made provision is to say, look, we are insuring you up to this time. If we receive a report before this time, then we will process your claim. If we receive a report after this time, we're not going to process it because that's the very nature of the policy. That's not the sort of issue that we're being confronted with here. And the Texas Supreme Court is very clear that if there's a prompt notice provision that's in a claims made policy, then that requirement is a distinct requirement that as long as the claims made provision isn't being violated, the prompt notice provision, some technical violation of that, you must show prejudice in order to prevail. With that said, Your Honors, I'll move on to the applicability of exclusion in itself, the contract interpretation issue that's involved in this case. First off, it's important to note that... I'm sorry, Judge Ramirez, did you have a question? I will, but I'd like to hear what you're going to say first. You might answer it. Sure, yeah. I'll start off by saying that no one disputes that we satisfied the Commission's precedent that are at issue in this policy. There are two requirements for bodily injury liability coverage. Number one, that the pollution condition that caused the injury arose between 2006 and 2023. And number two, that the claim was reported during the policy period. That clearly happened. So the question is whether or not exclusion in creates a different reporting requirement. Now, the very reporting requirement that they claim is applicable to bodily injury liability coverage is mentioned in the condition's precedent, but it's mentioned as a reporting requirement for first-party cleanup expenses. It's specifically omitted from the list of reporting requirements for a bodily injury liability coverage claim. So that distinction under normal contract interpretation principles would make a difference. The fact that they're relying on exclusion in to argue otherwise is a bit dangerous just from the get-go, because this Court has made quite clear that in the National Casualty Corporation case that we cite in our standards of review in the opening brief, that the insurers, or the insureds, excuse me, interpretation of an exclusion will prevail so long as it is not unreasonable. Now, the stance that we're taking, we believe, is not just reasonable, but the best interpretation of the policy for at least four reasons. First, interpreting exclusion in to create a new reporting requirement for bodily injury liability coverage would destroy the distinction between the conditions at issue here. Suddenly the fact that Section 1.1a makes mention of reporting pollution conditions and the rest of the provisions don't, that's gone, that is complete surplusage. Number two, it destroys the effect of the title of exclusion in, which states that it's a penalty for non-disclosure. It makes no sense to impose a penalty in Section 2 for non-disclosure if there was no disclosure requirement that was put in place to begin with in Section 1. Number three, when you read the base policy, and to be clear, the base policy is still what is put forth for signature. You know, it's in the record that we submit. These parts of the base policy are later stricken by endorsements, but if you're a reasonable person reading through the contract, you're going to read all of these provisions together. And the base policy gives the insured a right that they may give notice of a pollution condition that they think might lead to bodily injury liability coverage. And if they decide to do so, then it rewards them with additional years of coverage. It's hard to see how that provision in the base policy is reconcilable whatsoever with the insurer's interpretation of exclusion in. One would think that all of these provisions would harmonize since they're all put together on the base policy, and yet they do not, under the insurer's interpretation, that is. And then finally, there's just basic business and pragmatic reasons that contracts are structured this way. So it makes sense, and in fact, it would be somewhat of an absurdity to interpret it otherwise. It's a definition of pollution condition that's given in the policy is very broad, right? It's really any chemical, any substance that's present in a greater degree or in a different degree than would be present in the natural environment. That's everything in this room, more or less, except for perhaps the oxygen in the air, the nitrogen in the air. And certainly for a chemical manufacturer such as OQ Chemicals that's dealing with a huge series of extremely complex chemical formulas, many of which are not exactly compatible with the organic chemistry going on in a human body, that's a gigantic list. Now, perhaps it would be possible for some experts to catalog at one time the number of chemicals that are in this room or even in the OQ facility at Bay City and then submit that to the insurers and say, here are all of the chemicals that we know of that might cause a bodily injury to someone. But the denial, I would encourage your honors to review the actual denial of coverage letter that my client received. And this position, I think, that is brought by the insurers even to this day is that the problem wasn't that they didn't know that there was carbon monoxide at the Bay City facility. Of course they knew that. Carbon monoxide is one of the most basic syngasses used to synthesize the more complex chemical compounds that exist in the OQ Chemicals facility and suite of products. What they're claiming is that they didn't know that there was carbon monoxide in this particular unit at this particular time. That's the reporting requirement that's set out in Section 4A for reporting pollution conditions. We think pollution conditions that need cleanup because that's what Section 1, the conditions precedent lays out. But that's the alternative, what insurers are saying, is that every time a new chemical comes into existence or moves to a different area inside the entire facility, that is a separate pollution condition that needs to be reported. That would require godlike knowledge of the molecules and their movement in real-time reporting. That would simply be completely undoable. You're getting close on time, so I am going to ask the question if you don't mind. Yeah, yeah, of course. Is OQ contending that exclusion in is ambiguous? You saw it leave below to amend the complaint to allege ambiguity, and your briefing seems to spend a lot of time on contract interpretation, so is it OQ's position that it's ambiguous or not? No, Your Honor. Now, we think that we're pretty confident in our interpretation of exclusion in as not applying to bodily injury liability coverage and that we don't need to rely on ambiguity to get to where we want to go in this case, but that being said, as the insurers themselves admitted at, I believe it was Record on Appeal, page 786, they admit that the court may, sua sponte, find a contract ambiguous if you don't end up agreeing with either of the parties. If you think, you know, Mr. McGuire sounded fairly confident, opposing counsel sounded fairly confident, but I'm not so confident either way, then you're free to sua sponte find this contract ambiguous, Your Honor. So you agree that the plain language of exclusion in applies here. That's what we look to to see if it applies here or not. Yeah, the plain language of exclusion in and the plain language really of the entire policy because under Texas contract interpretation principles, the job of a judge is to read the contract in a way that harmonizes all provisions and we think that perhaps if one is hyper fixated on the language of exclusion in and not even reading the title or reading section 1 or section 4, if you just read that, you could say it's ambiguous. It's not clear whether it applies to all or some types of coverage. Can you point us to a case from the Texas Supreme Court or any Texas court that says you have to show prejudice in an exclusion case? Well, the PAG case is the case that directly discusses that, which we discuss in our reply brief how it explicitly addresses an argument that, well, in one case, we're dealing with an exclusion. In another case, we're dealing with a policy provision and that should make a difference for the notice prejudice rule and the Texas Supreme Court explicitly says that does not make a difference. So PAG is your best case? I would say PAG is the case that on all four squarely resolves that issue, yes. I have a sensitive neck case, but that's neither here nor there. I know, and I'm sorry to abuse you. Citing both dissents, or not citing both dissents. Thank you, Your Honor. Yes, you've saved time for rebuttal. Yes.  May it please the court, counsel, Sarah Smith on behalf of underwriters. I'm going to start where counsel left off and that is the PAG case. The PAG case is easily distinguishable from this case because the PAG case was based on a current space policy. We have a claims made and reported policy. To the extent that you need to get to a conditioned precedent, the more apt case is actually the case cited by Judge Bennett in his order, the Matador case, where it says in claims made policies, because that is a strictly negotiated and construed provision, you don't have to prove prejudice. That's if you get to conditions precedent. I know there's a great disagreement about this, but we do not believe you even get to section four of the policy, which is the so-called notices provision. Rather, this case is a pretty simple, straightforward case that pertains to one exclusion, exclusion in. We're going to hear a lot about exclusion in as you already have. Exclusion in excludes coverage when the insurer does not give notice of a pollution condition. Now there's some discussion about when or how that notice is given versus notice of a claim. We're talking about a pollution condition. Nothing in this policy limits pollution conditions to first-party coverage. In the insuring agreement on the first page, it does indicate that if you're going to give notice as a conditioned precedent of a pollution condition for first-party coverage, you must do it within the policy period. With regard to claims, it carves out first-party coverage because guess what? You only give notice of a claim in a third-party action. In a first-party action, there's no one to give notice of a claim to. The claim is against the insured. Logically, it makes sense that an insured should only be held to give notice of a claim when it's brought to them by a third party if they're making a first-party claim to the insurance carrier, then that would be with regard to a pollution condition that exists during the policy period. For the appellant to prevail here, the court must do at least three things, which, quite frankly, it's not permitted to do. It must ignore that express and unambiguous language of exclusion in. It must ignore some words of the policies and definitions in words like loss. And it's got to ignore the case law that I've already mentioned that requires a showing of prejudice, which it's just not required in this case because conditions, precedents, and the notice prejudice rule actually goes to when there's actually otherwise coverage. In other words, there's a covered event and the insured fails to report it timely. The insurance carrier is then prejudiced by that. That is a different situation than we have here. I'd like to talk about what exclusion in actually says and why it's important and why the words matter. I would also like to talk about some of the practical considerations that the appellant has raised with regard to why it's not feasible for them to report, quote, every pollution condition, end quote. And then finally, the fortuity doctrine. I think that that is important as well. With regard to what exclusion in actually says, it's an insurance policy. There's a whole section on definitions. Those words matter. Exclusion in provides that the policy does not apply to claims or losses arising out of a pollution condition known by a responsible insured prior to the inception date of the policy. Here, the exclusion talks about those specific terms on purpose and Oakview would have this court ignore some of those terms and cherry pick some of those terms. We're not permitted to do that under well-established contractual interpretation law. The first important term is loss. Loss is defined to include damages because of bodily injury. This completely cuts against appellate's argument that for some reason exclusion in only applies to first party coverage. Again, the exclusions apply to claims or losses. Losses is defined to include third party claims. Second, the pollution condition itself is a defined term. And I'm paraphrasing, but it's essentially the discharge or migration or seepage of a solid liquid or gas, irritant or contamination, without the insured's consent. So basically something is not where it's supposed to be. This is a chemical manufacturing facility. Clearly, it has chemicals that could be irritants or contaminants. However, it is when those move to a place they're not supposed to be when the pollution condition arises. Here, it is undisputed that Mr. Perez, the plaintiff in the underlying action, was exposed to high levels of carbon monoxide. That's an irritant or contaminant. It is undisputed he passed out and he was transported via ambulance to the hospital that day. There is some suggestion that maybe the appellate didn't understand that that could ripen into a bodily injury claim. It did undertake quite an extensive investigation. And that's important because as part and parcel of that investigation and during discovery in the underlying action, it became clear that OQ and its team spent two weeks investigating that incident and did a root cause analysis. For our purposes, the investigators are important because the responsible insureds in the exclusion in provision must be certain members of OQ's team. It can't be just anybody, right? It's got to be somebody who is responsible for health and safety. In this case, it is undisputed that the health and safety manager, Mr. Kumar, was involved in this investigation. The section leader, Mrs. Christina Zellman, was involved in that investigation. Dee Taylor was an HSC section leader, health and safety section leader. This is stipulated too in the record. There is no dispute that responsible insurers knew about the pollution condition that was failed to be reported. Again, those facts are not in dispute. Judge Bennett agreed that because those responsible insureds had knowledge of a pollution condition that was not disclosed, summary judgment was appropriate because exclusion in bar coverage. Judge Ramirez asked the question about the ambiguity argument. I'm still not sure if I know the answer, quite frankly. If the appellate is arguing the policy is ambiguous or not, they do proffer an interpretation that exclusion in only applies to first-party cleanup coverage. Again, nowhere does it say that in the policy. So my thought is if you were arguing for an interpretation that is not within the clear language of exclusion in, you probably are arguing ambiguity. The appellate has set forth some interesting arguments about that, including the title of the provision, including the fact that giving notice for a pollution condition for a first party is different than giving notice of a claim for the other coverages. We've talked about that. The second argument that they make with regard to that is what we're calling the practical considerations provision or consideration, and that is we can't really give you notice of every pollution condition in a chemical manufacturing plant. However, in doing that, in providing the laundry list of things in the reply that OQ did, which is a wall or a staircase or I think an energy drink, I think we can agree that you've still got to have the contaminant or irritant, and it's got to be something that's where it's not supposed to be. With regard to the wall or staircase, yes, stairs can be irritating, I suppose, and energy drinks probably are contamination, but in this case, it's got to be somewhere without the insured's consent. So OQ would just have us ignore all those additional requirements, quite frankly, to meet the definition in making this parade of horribles argument with regard to giving notice. But to be clear, OQ is a sophisticated insured. It's got a broker. It deals in dangerous chemicals. So to the extent that it needs to give notice, that's exactly what it should do, and in fact, it should have done with the Perez incident without issue, especially in light of the Perez incident when while the severity may have been downplayed at some extent, Mr. Perez lost consciousness. He was taken via ambulance, did a two-week root cause analysis. There's been no reason why this was not reported, and it was not reported within the policy period in which it occurred. And probably most importantly, I think for our purposes, there is no authority cited for the proposition that because you find something onerous in a contract under which you've undertaken, you don't have to do it. To the contrary, in Texas, well-established case law that an insured is deemed to read and know the policy provisions and understand them. Again, in the case of a responsible insured with a broker, there's really no excuse. Those practical considerations just really are of no moment in a bodily injury context such as we have here. We've talked a little bit about no disprejudice. It starts with a big assumption, and that is that that condition applies here. It doesn't. You don't reach it. There is coverage undisputed. The exclusion then negates coverage. There is no buying it back. The PAG case, like I said, is readily distinguishable because it's an occurrence-based policy, so it's different. Here, had the exclusion not applied and had OQ proceeded and just didn't tell the carrier or maybe told them late, that's when you get to the condition precedent, notice prejudice rule that exists in Texas. There are some cases we cite in our brief, the Gorgeous case, where basically you don't get there. The prior knowledge exclusion applies without getting to whether or not the insured has prejudice because it requires that the insured knew or should have known and given notice about it. Again, the Matador case, to the extent that you do need to reach it, it just doesn't apply in a claims-made policy. The Fortunity Doctrine. Fortunity Doctrine holds that coverage is precluded where the insured is or should be aware of ongoing loss. Here, there's an argument that it wasn't pled. Interestingly, I think the Maxson case tells us that the Fortunity Doctrine is basically the flip side of the same coin as the known loss exclusion. It is the common law equivalent of the known loss exclusion. So, OQ had notice of it because that's, quite frankly, what the entire lawsuit is about. It can't credibly argue that it was unaware that whether a loss or a pollution condition was known prior to the exception. So, I think the waiver argument is a little tenuous at best. Again, whether OQ knew that it was going to be sued and there was a suggestion about the date being wrong in the order is of no moment because it's not the lawsuit that invokes the Fortunity Doctrine, it's the loss. In sum, to conclude, it is our position that the district court did get it right. They got one fact wrong and that's the date of the lawsuit. Quite frankly, that the accident occurred on, in April 2019, the suit was filed in September 2019. That was in the prior policy. OQ failed to provide notice of the claim or pollution condition despite the fact that Mr. Perez was taken by ambulance to the hospital. It was then renewed in January of 2020. The suit was served after the beginning of that. So, that's when they had first notice of the claim. But that's the only factual error you heard. With regard to the law, again, we believe that the district court correctly relied on other precedent to hold that the exclusion in unambiguously barred coverage in this situation. I'd like for you to please address whether exclusion in is a scope of coverage provision or reporting covenant. It is a scope of coverage. The insuring agreement in Section 1 provides coverage, exclusions take it back. With regard to the purpose of it, the purpose of it is to allow an insurer to be able to capture its risk. What it is contractually obligated to provide versus the underwriting premium money it is getting. All right. Thank you, Mr. McGuire for a rebuttal. I'd like to start off by addressing something that I think might be a bit confused in this case, which is that insurers were not asking us to report the Perez incident to them as an incident of bodily injury liability or potential liability, rather. They are completely content to cede to us, as I said in my opening, that the conditions precedent for reporting bodily injury coverage were met. What they're saying is not, oh, you should report the incident where Mr. Perez was injured. That would actually be a completely reasonable reporting requirement, although it would probably not be a reporting requirement that you would think to find in an environmental site pollution policy. That would probably be more something you would think in a health and safety insurance policy or a workplace accident policy, something like that. What they're saying is that you should have reported the carbon monoxide when it entered the unit that Mr. Perez was cleaning in April of 2019. Now, just as a bit of factual background here, every time that there's a turnaround, which is the incident in which Mr. Perez was injured, OQ actually does have a worker go in with a carbon monoxide detector into the unit, and here the reader said there was no carbon monoxide. So the precautions were taken. There was no knowledge that there was any carbon monoxide. There was certainly a negligible amount under any pollution reporting requirements. So I just want to focus on that distinction. Are you disputing that there was carbon monoxide sufficient to render him unconscious? Obviously not, Your Honor. Obviously not, although it's a little unclear from the factual record how that happened, because remember he was accompanied by another person who was not affected at all by the carbon monoxide. But again, we do not want to dispute or downplay Mr. Perez's accident. That's not really essential to anything that's going on in this case. Well, he was injured. Are you disputing that he was injured by carbon monoxide? No, not at all, Your Honor. What we're saying is that his injury wasn't the problem from the insurer's perspective. The insurer's perspective is that whenever there's carbon monoxide somewhere, that needs to be reported. And the definition isn't actually, I want to focus on that, because they gave a definition of pollution condition that I think is a bit misleading here. The definition does say that if a pollutant is abandoned by a third party without consent, that that is one type of pollution condition. But that's not the only type of pollution condition here. It's not simply without substances that are present without consent. It's also any solid or liquid or gaseous material that migrates at any point during the time of the insurance policy. I'll switch to the distinction that they made for the PAG case. They said, well, that was an occurrence policy, which is true. But the Texas Supreme Court has applied the same rule to claims made policies so long as the violation of a claims made provision is not what's at issue here. So for example, the Financial Industries Corporation case that we cite on page 40 of our original brief applied the notice prejudice rule to a claims made policy, but not a claims made provision, a prompt notice provision that is separate from the claims made deadline. As to the ambiguity point, Your Honors, the reason that we don't think that this contract is not ambiguous is not. Whoa, whoa, whoa. You don't think that it's not ambiguous. Sorry, I got tripped up here. The reason that we're not arguing ambiguity, that ambiguity is something that is before this court that could be decided, but not something that we're standing as our grounds for reversal on, is because there's context to this policy. It's not merely exclusion in an isolation. There is the conditions precedent, which clearly impose a pollution condition reporting requirement in the one instance, but not in the other. That distinction gets destroyed. So for those reasons, Your Honors, we ask for reversal and judgment in favor of OQ. All right. Thank you, Mr. Aguirre. Your case is under submission, and the court will take a break.